**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

SEAN SULLIVAN, individually,
and on behalf of all others similarly situated,

    Plaintiff,

v.

PARTSBASE, INC. d/b/a CERTIFIED
LUXURY WATCHES, ROBERT A. HAMMOND,
and SIGRID M. HUBER,

    Defendants.

COLLECTIVE ACTION
Case No.: 9:20-cv-80630-DMM

---

**JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT**

Plaintiff, SEAN SULLIVAN ("Sullivan"), individually and on behalf of opt in Plaintiffs: MARK SIEGEL, CARY PERLMAN, DAVID JACOBS and MICHAEL PIETROS, together with Defendants, PARTSBASE INC., ROBERT A. HAMMOND AND SIGRID M. HUBER, collective herein referred to as "Partsbase" or Defendants, by and through the undersigned counsel hereby jointly move for this Court's review and approval of the settlement agreement between the Plaintiff and Defendant (collectively the "Parties") and for entry of order approving the terms of the settlement agreement attached hereto as Exhibit 1, as per *Lynn's Foods*, and in support thereof state as follows:

**INTRODUCTION**

Plaintiffs and Defendants (collectively, the "Parties") have entered into a Settlement Agreement (the "Settlement Agreement") pursuant to which Defendants shall pay Plaintiff

1

Sullivan and the four Opt-In Plaintiffs who have filed their consent to join this action, a sum of Thirty Nine Thousand Five Hundred Dollars (the "Settlement Funds") in exchange for the release of Plaintiffs' wage claims and dismissal of this case, as well as for execution of a separate mutual general releases in consideration of $100.00 from the gross settlement fund.  The Parties, by and through the undersigned counsel hereby move this Court for an order approving the terms of the Settlement Agreement, dismissing the case, and retaining jurisdiction to enforce the terms of the Settlement Agreement. The Settlement Agreement represents a fair, adequate and reasonable compromise of the claims at issue in light of the existence of disputed issues of fact, disputed issues of law, questions regarding whether the Plaintiffs would obtain a favorable judgment at trial, the significant expense of continued litigation, and the risks of possible appeals.

## BACKGROUND

1. Plaintiffs were formerly employed by Defendants as inside sales representatives buying and selling watches in the company's Luxury Watch division.

2. Defendant, PartsBase shut down this division back in 2019, but continues in business of providing a platform and website to companies seeking to bid on and sell airline parts to the federal government.

3. On April 13, 2020, Plaintiff Sean Sullivan brought this action on behalf of himself and all other similarly situated employees pursuant to the Fair Labor Standards Act (the "FLSA"), claiming that Defendants violated the FLSA by failing to pay overtime compensation for all hours worked in excess of forty (40) during any given workweek [DE 1].

4. Subsequently, four other inside sales representatives and former employees of PartsBase joined this action by filing consent to join forms. [DE 6, 15, 18, 26]. Other persons also opted in but subsequently withdrew and requested their consent forms be withdrawn.

5. Each opt in Plaintiff, in lieu of filing their own individual lawsuit or action, specifically authorized Sean Sullivan to negotiate and reach a settlement with the Defendants on their behalf and agreed to be bound by the terms of any such settlement reached according to the express terms of the Consent to Join Forms executed by them.

6. The Plaintiffs alleged that PartsBase failed to pay overtime compensation for work performed, alleging they all worked off-the-clock, and that the company did not have accurate time records or an accurate time tracking system.

7. PartsBase Answered the Complaint denying the Plaintiffs' claims and continues to deny any and all liability and any violation of the FLSA. PartsBase maintains that it properly paid the Plaintiffs for all hours worked, and that Plaintiffs did not work off-the-clock.

8. PartsBase also has argued that if the litigation would continue, they would seek to file a Section 207i Retail Exemption defense for all the Plaintiffs. Nonetheless, PartsBase has concluded that further litigation of this matter would be protracted, distracting and expensive, and thus it is desirable that this matter be fully and finally resolved in the manner and upon the terms set forth in the Settlement Agreement.

9. Plaintiffs believe that their claims have merit, and that the Settlement Funds that each Plaintiff receives pursuant to the attached Settlement Agreement, fairly and reasonably compensates them for their unpaid overtime compensation and liquidated damages that they might be awarded by a court or jury.

10. Based upon Plaintiffs' investigation and evaluation, Plaintiffs and their experienced FLSA wage and hour attorneys have determined that the settlement set forth in the Settlement Agreement is in their best interest. Plaintiffs recognize and acknowledge the expense and duration of continued litigation necessary to prosecute the claims of all Plaintiffs' claims against PartBase through summary judgment, trial and possible appeal would be time consuming, burdensome and inherently uncertain. Moreover, given the challenges and complex litigation and discovery disputes presented, this case would, if continued, primarily be consumed by the amount of attorney's fees and costs rather than the damages or wages at issue.

11. Plaintiff commenced with serving written discovery and had depositions of Defendants and other witnesses scheduled, including those of Ms. Huber, Mr. Hammond, a corporate representative of PartsBase, and former officer Anthony Rinaldi.

12. Defendants provided Plaintiff's counsel with payroll records of the Plaintiffs demonstrating their alleged work hours and compensation, including earned commissions.

13. After engaging in the early stages of discovery in this matter, there remained many genuine issues of material dispute:

  a. Whether Plaintiffs worked off-the-clock;

  b. Whether Defendants were aware of Plaintiffs alleged work off-the-clock;

  c. Whether Plaintiffs' overtime hours were calculated correctly and were paid at all including whether Defendant's underpaid Plaintiffs for overtime hours, or whether Defendants failed to use the properly calculate the regular rates of pay for the Plaintiffs who earned overtime wages;

    d. Whether a two- or three-year statute of limitations should apply;

    e. Whether Defendants acted in objective and subjective good faith such that payment of liquidated damages may be applicable;

    f. Whether any of the individual defendants were employers within the meaning of the FLSA;

    g. Whether Plaintiffs were compensated for all compensable hours worked, and

    h. Whether Plaintiffs worked in excess of forty (40) hours and, if so, whether Plaintiffs received proper overtime compensation.

    i. Weather Defendant's acted in good faith compliance with the FLSA;

    j. Whether Defendants could assert and prove application of the Section 207i retail exemption.

14. Notwithstanding the foregoing, upon careful review of the Plaintiffs' payroll records, Plaintiffs and their undersigned counsel determined that a compromise was in their best interests.

15. Plaintiffs understood and acknowledged that had they proceeded to trial, there was an inherent risk to the SOL limiting their wages to a 2 year period, back to approximately April 2018, and further that the court may decline to award liquidated damages.

16. On September 30, 2020, the Parties reached a settlement in principle and the terms of the settlement were subsequently reduced to writing. Plaintiff Sullivan has executed the written Settlement Agreement individually and in his representative capacity and as agent for the opt in Plaintiffs. The Settlement Agreement executed in counterparts is attached as Exhibit 1.

17. The Plaintiffs reached this settlement with advice of counsel and relying upon their counsel to analyze the payroll and perform wage calculations which would be pro rata to each of the Plaintiffs according to their alleged unpaid overtime hours, the wages they each received, their own respective regular rates of pay and taking into consideration the exemption arguments and potential defenses of PartsBase. Moreover, one of the opt in Plaintiffs specifically was paid overtime wages throughout his employment, and Mr. Sullivan earned more than $100,000 in annualized pay, as well as being converted to a salaried supervisor allegedly in his last three weeks of employment.

18. Pursuant to the terms of the Settlement Agreement, Defendant PartBase has agreed to pay Plaintiffs the aggregate sum of $39,500,00, which includes $100.00 for execution of a mutual general release, which also benefits the Plaintiffs as PartBase releases them from all claims. These separate general releases are available for the Court to review if needed, and the parties are clearly transparent here that these separate mutual releases benefit both sides.

19. The Parties note that this Court has previously approved FLSA settlements with general releases which had separate consideration in them, and here as pointed out the releases are mutual.

20. Pursuant to the terms of the Settlement Agreement, the Parties separately negotiated and agreed for PartBase to pay Plaintiffs' attorneys' fees and costs, totaling $39,000.00, which included reimbursement of Plaintiffs' costs in this matter incurred.

21. Plaintiffs' attorneys' fees and costs were separately negotiated and agreed upon by the Parties without regard to the amount paid to Plaintiffs so as not to affect the wages.

22. For purposes of settlement, the Parties stipulate that the quantum of attorneys' fees and costs is fair and reasonable pursuant to *Bonetti v. Embarq Mgmt. Co.*, 2009 WL 2371407, at *3-4 (M.D. Fla. Aug. 4, 2009).

23. In the Settlement Agreements, the attorneys' fees and costs were allocated to each Plaintiff proportionally.

24. The Parties have executed seven individual Settlement Agreements consenting to and agreeing to both the individual payment amounts and the allocation of the attorneys' fees and costs as fair and reasonable.  *See* Exhibit 2.

WHEREFORE, for the reasons stated above and as set forth in the below Memorandum of law, the Parties respectfully request that the Court enter an order approving the Settlement Agreement and reserve jurisdiction for a period of 60 days to enforce the terms.

## **MEMORANDUM OF LAW**

### I. THE COURT SHOULD APPROVE THE PARTIES' SETTLEMENT BECAUSE IT REPRESENTS A FAIR AND REASONABLE COMPROMISE OF DISPUTED CLAIMS

#### A.  The Settlement Meets the Requirements Set Forth in Lynn's Food Stores, Inc.

As the Eleventh Circuit explained in *Lynn's Food Stores, Inc. v. United States*, in the "context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations, the parties must present any proposed settlement to the district court, which "may enter a stipulated judgment after scrutinizing the settlement for fairness." 679 F.2d 1350, 1353 (11th Cir. 1982).  Settlements are "permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by employees provides some assurance of an adversarial context." *Id.* at 1354. This is because the employees are "likely represented by an attorney who can protect their rights under the

statute." *Id.* "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as coverage or computation of back wages, that are actually in dispute, [the Eleventh Circuit] allows the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.*

After scrutinizing the settlement, this Court will find that the Parties' Settlement Agreement is fair, reasonable and should be approved. The Stipulation resolves a *bona fide* dispute between the Parties with respect to whether the employees at issue are entitled to unpaid overtime compensation for work allegedly performed off-the-clock.

Furthermore, the Plaintiffs were represented by experienced counsel, who in the "adversarial context of a lawsuit," negotiated for all the Plaintiffs, a "reasonable compromise of disputed issues." *See id.* at 1354. When adjudicating motions for approval of settlements, courts operate under a "strong presumption" in favor of approval. *See Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977); *Lynn's Food Stores*, 679 F.2d at 1353.

In detailing the circumstances justifying court approval of an FLSA settlement in a litigation context, the Eleventh Circuit has stated:

> *Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.*

*Lynn's Food Stores,* 679 F.2d at 1354.

Before approving a FLSA settlement, the Court must scrutinize it to determine if it is "a fair and reasonable resolution of a bona fide dispute." *Id.* at 1354-55. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

In determining whether the settlement is internally fair and reasonable, the Court should consider the following factors:

- A. the existence of fraud or collusion behind the settlement;
- B. the complexity, expense, and likely duration of the litigation;
- C. the stage of the proceedings and the amount of discovery completed;
- D. the probability of plaintiff's success on the merits;
- E. the range of possible recovery, and
- F. the opinions of the counsel.

*See Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994); *Dees v. Hydradry, Inc.*, 2010 WL 1539813, at *8 (M.D. Fla. Apr. 19, 2010); *Hamilton v. Frito-Lay, Inc.*, 2007 U.S. Dist. LEXIS 10287, at *2-3, (M.D. Fla. Jan. 8, 2007); *see also Hill v. Florida Indus. Elec., Inc.,* No. 6:06-cv-915-Orl-31JGG, 2007 U.S. Dist. LEXIS 9498, at *6, (M.D. Fla. Feb. 9, 2007); *Pacheco v. JHM Enters., Inc., et al.,* 2006 WL 948058, at *4 (M.D. Fla. Apr. 12, 2006). The Court should be mindful of the strong presumption in favor of finding a settlement fair. *Hamilton*, 2007 U.S. Dist. LEXIS at * 2-3*; see also Cotton v. Hinton.* 559 F.2d 1326, 1331 (5th Cir. 1977).

### B. The Settlement Was The Result Of Arm's Length Negotiations Free From Collusion.

The settlement reached was the result of hard-fought, adversarial, arm's length negotiations that have taken place over litigation that has been ongoing for six months. In determining whether a settlement was negotiated at arm's-length, courts look to whether there was "vigorous and comprehensive litigation" or whether the settlement was a result of collusion among the parties. *Pickett v. IBP*, 2001 U.S. Dist. LEXIS 22453 (M.D. Fla. December 21, 2001). Here, the settlement was negotiated at arm's-length by experienced counsel, free from fraud or collusion. The Parties were able to settle this action only after they engaged in some limited discovery, as well as analysis of the payroll records of the Plaintiffs. See *Diaz v. Hillsborough County Hos. Authority,* 2000 U.S. Dist. LEXIS 14061, *11 (M.D. Fla. Aug. 7, 2000) (*quoting Cotton*, 559 F.2d at 1330) (Absent fraud and collusion, the court not only may rely on the judgment of experienced counsel, but "should be hesitant to substitute its own judgment for that of counsel"). The litigation activities between counsel and PartsBase in this matter show the adversarial nature of this litigation, and the benefits of a compromised settlement. Moreover, Plaintiff Sullivan desired a resolution in lieu of litigation and time commitments with having to continue on and also have to commit to attending a trial and risks of a zero recovery. The Court should find that the settlement was the result of arm's-length bargaining.

Based upon their extensive experience in wage and hour collective and class actions, Plaintiffs' counsel believe that on inspection, this Court will join them in concluding that the proposed Settlement Agreement is fair, reasonable and worthy of approval. It bears all the indicia of fairness warranting approval as set forth in *Lynn's Foods* because Plaintiff and the Class Members were represented by experienced counsel, who, in the "adversarial context of a lawsuit"

engaged in "serious, informed, arms-length negotiations" of "a *bona fide* dispute with respect to liability [and] amounts due under the Act," resulting in a fair, and reasonable compromise of claims in settlement. *See Lynn's Foods,* 679 F.2d at 1353-54. Here, the Plaintiffs are each receiving on average, nearly $8000.00 in compensation without having to prove anything to a jury and based solely upon their alleged estimations of unpaid work hours. Each Plaintiff likewise is receiving a pro rata share based upon the hours each alleged and taking into consideration the actual payroll records, including weeks where they did not work even 40 hours, as well as considering work weeks beyond the two year SOL. Further, at least one of the Plaintiffs frequently reported and was paid overtime wages, which was also factored into the final settlement agreed upon.

### C. The Complexity, Expense and Duration of Litigation.

The complexity, expense, and length of future litigation also militate in favor of this settlement. This case was filed in April 2020, and settlement was preceded by more than five months of litigation. During the pendency of the case, the Parties engaged in informal and formal discovery, including exchanging payroll records, personnel files and videos of Plaintiffs disclaiming they were owed any overtime hours. Plaintiffs' counsel conducted extensive interviews of Plaintiffs, and also analyzed and assessed all of the payroll records and other PartsBase records and documents. This matter was resolved only after extensive research and analysis and arms-length negotiations.

Further, if the Parties continued to litigate this matter, they would be forced to engage in costly and protracted discovery and litigation, summary judgment briefing, and likely a jury trial on questions of fact and damages in order to present the claims and defenses regarding whether Plaintiffs were required and/or permitted to work off-the-clock without overtime compensation

11

and whether Defendant could retroactively seek to apply exemption defenses never asserted. To prove their claims or defenses, the Parties would incur extensive costs involving depositions and the review, potentially involve forensic computer analysis, costly ESI discovery, and then likely have to pour over tens of thousands of time records, computer log records and telephone records along with emails to assess the claims and hours alleged to have been worked. Therefore, this settlement is a reasonable means for both Parties to minimize future risks and litigation costs. Additionally, after careful review of the records and discussions with counsel, the Plaintiffs believe they are receiving a fair and reasonable amount of wages and do not wish to continue with costly, risky litigation without any real potential to recover additional sums. Moreover, Plaintiffs also carried the risk of having to pay Defendant's cost and expenses if they did not prevail, risks they were seeking to mitigate against and to naturally and logically avoid as the litigation costs would be steadily increasing with depositions yet to come.

**D. The Stage Of Proceedings At Which The Settlement Was Achieved.**

The Parties reached settlement after more than five months of investigation and discovery in the course of litigation. Counsel for the Parties spent significant time and effort advocating legal theories, exchanging discovery and modeling the potential damages at issue in this case. The Parties exchanged documents, damage calculations, compensation information, and engaged in detailed evaluation of PartsBase compensation practices for Plaintiffs.

There has been sufficient investigation and exchange of information to allow counsel and the Court to act intelligently in this matter. The Parties exchanged records, information, data and representations regarding the claims and defenses in this matter. In agreeing upon the proposed

settlement, the Parties had sufficient information and conducted an adequate investigation to allow them to make an educated and informed analysis and conclusion.

### E.  The Likelihood of Success at Trial.

Defendant is no longer in the business of being and selling watches, and instead its business is related to provident platforms and programs for governmental contract bidders in the airline parts industry.  Plaintiffs were employed as sales representatives, buying and selling watches during the relevant period of 2017 to 2020. The core *bona fide* FLSA disputes in this case relate to whether Plaintiffs were required and/or permitted to work off-the-clock without proper and adequate overtime compensation; whether any or to what extent any overtime pay is due; whether liquidated damages are appropriate; whether a two or three-year statute of limitations would be applicable, along with Defendant's other exemption arguments of highly compensated persons and the Section 207i retail exemption.

The Plaintiffs would face significant obstacles and risk an unsuccessful outcome if this case were to proceed to trial.  First, Plaintiffs would face a risk at trial of not prevailing on their wage claims because they would have had to establish that they in fact worked off-the-clock without adequate overtime compensation.  At trial, PartsBase would have claimed (i) PartBase has an express policy forbidding ISR from working off-the-clock; (ii) PartsBase implemented safeguards to prevent collectors from working off-the-clock; (iii) Plaintiffs signed documents and were interviewed on video, stating they did not work overtime, and were not owed overtime compensation, (iv) PartsBase enacted and enforced policies sufficient to show that it acted in both objective and subjective good faith such that a two-year statute of limitations should apply and that liquidated damages are not appropriate in this instance.

If the case were tried, the jury would have been presented with a case where PartsBase would have argued that it maintained compliance with the FLSA, and Plaintiffs would bear the burden of proving that they worked off-the-clock with PartBase's knowledge and/or tacit permission of management.

Second, Plaintiffs would have had to establish the number of hours they worked off-the-clock.  In the damage analysis conducted by Plaintiffs' counsel, each Plaintiff is credited with being paid many hours of unpaid overtime wages during weeks they worked a full 40 hours and were neither paid any overtime wages.  Moreover, Plaintiffs also discounted all months in which Plaintiffs earned more than 50% of their monthly gross wages in commissions to account for the Defendant's Section 207i exemption arguments.  Plaintiffs then discounted the wages at issue by factoring in the risks of the Defendant's arguments and evidence to be presented at trial, along with the lack of records of their work hours to come upon with discounted damage analysis, including the reduction of work weeks beyond the 2 year SOL for each Plaintiff.  If the case were tried, PartsBase would have the opportunity to establish that the number of hours worked per week was less than the Plaintiff's approximated hours, which could have substantially reduced Plaintiffs' damages.  Furthermore, if Defendants prevailed on their good faith defense, liquidated damages would not be awarded, and similarly, all wages older than two years would be time barred.

Despite diligent investigation and research, it remains a highly uncertain question of fact as the actual overtime hours each Plaintiff worked off-the-clock, and whether or not a two or three-year statute of limitations is applicable and whether or not liquidated damages are appropriate in this matter.  In consideration of the close factual issues raised, and the significant costs of litigation required to build a litigation record sufficient to prove the claims or defenses, the Parties

reasonably chose to compromise the bona fide dispute. Sullivan always sought a compromise of the claims, and when such an opportunity arose, he chose to pursue resolution and compromise. It would seem to be illogical to force a plaintiff to assume the risks all of the way to trial, gambling on whether a jury would agree with him and the other plaintiffs on their alleged unpaid work hours, while meanwhile carrying the risk of having to pay Defendant thousands of dollars in costs and expenses if they did not prevail on their claims.

There is in this case, like most disputed claims and lawsuits, the possibility that Plaintiffs would recover $0, and worse would have to pay the other side many thousands of dollars in litigation costs. Ultimately, the Parties agreed to an amount of $39,500.00 representing a reasonable compromise in which each person on average is paid $7900.00 in wages, which represents about 263.33 work hours each, or 131.66 in unpaid hours and an equal sum in for liquidated damages, for each Plaintiff. This would also represent upwards of 2.5 hours per week of overtime hours per person using an average of 52 weeks of wages at issue.

### F. Plaintiffs' Counsel Should Be Awarded Attorneys' Fees and Costs In the Amount Agreed Pursuant to the Settlement Agreements.

The last element the Court should evaluate in determining fairness of the settlement is the reasonableness of the proposed attorney's fees. *See Helms v. Central Fla. Reg. Hosp.*, 2006 U.S. Dist. LEXIS 92994, at *6-7, (M.D. Fla. Dec. 21, 2006); *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849-50 (5th Cir. 1998). Provided "the plaintiff's attorneys' fee is agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of the fees paid to his attorney, the Court [should] approve the settlement

without separately considering the reasonableness of the fee to be paid to plaintiff's counsel." *Bonetti v. Embarq Mgmt. Co.*, 2009 WL 2371407, at *3-4 (M.D. Fla. Aug. 4, 2009).

In this case, the Settlement Agreement provides for the Defendants to pay Plaintiffs' Counsel attorneys' fees and costs as part of the resolution of Plaintiffs' claims in the amount of $40,200.00 in fees and costs, which includes including $1200.00 in taxable costs including filing fee, court reporter and process server charges plaintiff's counsel incurred. Plaintiffs' attorneys' fees and costs to be paid by the Defendants was separately negotiated from the sum Defendants agreed to be pay for the wage claims of the Plaintiffs, and reached after agreeing on the amount for wages. Moreover, Plaintiffs' attorneys incurred substantially higher sums in fees, (lodestars) and through negotiations with Defendant's attorney, the Parties reached a compromise as to the sum of attorneys' fees and costs to be paid by the Defendant without regard to the amount paid to Plaintiffs. See Exhibits 2, and 3, Declarations of Mitchell Feldman and Ben Williams in support of this Settlement. The Parties stipulate that the quantum of attorneys' fees and costs is fair and reasonable under the circumstances. Over the past 6 months of litigation, Plaintiffs' counsel spent a significant amount of time in the case preparing this case, the pleadings, reviewing documents, preparing damages models, analyzing records, researching applicable issues, engaging in formal and informal discovery, and engaging in settlement-related discussions with Defendant's counsel that ultimately resulted in this settlement. Further, at every step of the litigation, Plaintiffs' counsel was required to communicate with numerous Plaintiffs, many other witnesses, and assess the case, further increasing the number of hours expended in this matter. Additionally, counsel reviewed Defendant's employment records and payroll records of the Plaintiffs. The review required to reconcile each of these records and create a damage model was monumental, resulting in a

settlement that fully compensates each Plaintiff for the amount of unpaid wages due and owing to them as well as an equal amount of liquidated damages, as reflected in those records.

Plaintiffs' counsel spent substantially more hours than the attorneys' fees reflect litigating this matter from inception through filing the Joint Motion for Approval of Settlement. Plaintiffs' counsel also spent and incurred approximately $1200.00 in costs[1] associated with this litigation. During settlement negotiations, the Parties separately negotiated attorneys' fees and costs without regard to the amount owed to Plaintiffs. Ultimately, the Parties agreed to the payment of $40,200.00 in attorneys' fees and costs. Based upon Plaintiffs' counsel's hourly rates as awarded in other FLSA actions of at least $400.00 per hour, and the number of hours spent litigating this matter, the payment of attorneys' fees and costs of $40,200.00 is fair and reasonable under the circumstances, and is just $7800.00 per Plaintiff. Further, the fact that Plaintiffs' counsel agreed to a reduced attorneys' fee provision demonstrates that no conflict of interest adversely affected the Plaintiffs' recovery under the Settlement Agreements.

Further Plaintiffs' counsel's attorneys' fees and costs are reasonable in light of the fact that the total of $39,500.00 for wages in settlement of Plaintiffs' claims were obtained in spite of Defendants' vigorous defenses that Plaintiffs' did not work off-the-clock, that Plaintiffs were expressly forbidden from working off-the-clock, and the to be argued exemption defenses.

This case settled after five months of litigation, but still pending with a motion for conditional certification, which if granted could have changed the entire scope of this action. Thus, it is appropriate that Plaintiffs' counsel be fairly and reasonably compensated for performing these necessary legal services. Defendant's counsel stipulates that the quantum of attorneys' fees and

---

[1] Costs include filing fees ($400.00) and service of process fees ($500), and court reporter charges for appearances.

costs is fair and reasonable under the circumstances, and Plaintiffs have also agreed to accept the reduced amount of attorneys' fees from their respective lodestars for the purpose of ending this litigation and obtaining a settlement as Plaintiff Sullivan desired in lieu of the continued risks of trial, including the risks of having to pay the Defendant's litigation costs.

All of the above factors warrant the $40,200.00 stipulated to be paid to Plaintiffs' and their counsel for reimbursement of incurred attorneys' fees and costs as being fair and reasonable under all the facts and circumstances, and for approval of the amount to be paid to Plaintiffs for wages.

## **CONCLUSION**

The Parties voluntarily agreed to the terms of their settlement.  All Parties were counseled and represented by their respective experienced attorneys throughout the litigation and settlement process.  Accordingly, the Parties jointly and respectfully request that this Court approve the terms of the Settlement Agreement,  reserve jurisdiction to enforce the terms of this FLSA settlement agreement, and then dismiss this case with prejudice upon compliance by Defendants with the payment of the sum agreed upon.

Dated:  October 20, 2020.

Respectfully Submitted this 20th day of October 2020

**FELDMAN LEGAL GROUP**

s/*Mitchell Feldman*
Mitchell Feldman, Esq.
Florida Bar No. 0080349
mlf@feldmanlegal.us
6940 W. Linebaugh Ave #101
Tampa, Florida 33625
Telephone: (813) 639-9366
Facsimile: (813) 639 -9376
**Attorney for Plaintiffs**

**WILLIAMS LAW P.A.**

/s/ Benjamin L. Williams
Benjamin Lee Williams, Esq.
FL Bar No: 0030657
P.O. Box 3237
Ponte Vedra Beach, FL 32004
(t) (904) 580-6060
(f) (904) 671-9483
bwilliams@williamslawjax.com
**Co-Attorney for Plaintiffs**

**HODKIN STAGE WARD, PLLC**

/s/ Adam J. Hodkin
Adam J. Hodkin, FBN 962597
ahodkin@hswlawgroup.com and
Philip Ward, FBN 869600
pward@hswlawgroup.com and
Secondary email: jshand@hswlawgroup.com
54 SW Boca Raton Boulevard
Boca Raton, FL 33432
Phone: 561-810-1600
Fax: 561-300-2128
**Counsel for Partsbase, Inc.
and Robert Hammond**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20 day of October, 2020 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send an e-mail notification of such filing to counsel of record for all parties.

/s/ Mitchell Feldman
MITCHELL FELDMAN, Esq.
Florida Bar No. 0080349